UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSHUA PAVAO,

        Plaintiff,

v.                                                                     Case No: 6:20-cv-395-WWB-EJK

JEFFREY HERSHONE,

        Defendant.
                                              /

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 48), Plaintiff's Opposition (Doc. 50), and Defendant's Reply (Doc. 51).

**I.     BACKGROUND**

Defendant, Jeffrey Hershone, is a sergeant with the Winter Park Police Department. (Doc. 48-1 at 4:16–24). Plaintiff, Joshua Pavao, works as a tractor-trailer driver. (Doc. 48-2 at 14:21–15:1). On October 27, 2017, Defendant was responding to ongoing problems with delivery drivers parking in no parking zones and blocking access to residential properties in Winter Park and Plaintiff was delivering wine to a restaurant in the area. (Doc. 48-1 at 32:23–33:17, 36:13–18; Doc. 48-2 at 21:14–19). When Defendant arrived, he saw a white van illegally parked in a no parking zone and began writing a parking ticket. (Doc. 48-1 at 34:3–12; Doc. 48-2 at 22:11–15). Plaintiff was parked there for approximately four minutes. (Doc. 48-2 at 24:6–7).

While Defendant was writing the ticket, Plaintiff exited the restaurant, saw Defendant with the ticket book, and approached the van and walked to the driver's side door. (Doc. 48-1 at 34:15–23; Doc. 48-2 at 24:8–13). When Defendant attempted to hand

Plaintiff the ticket and discuss it with him, Plaintiff declined to take the ticket from Defendant's hand and entered the van. (Doc. 48-1 at 35:14–18; Doc. 48-2 at 24:22–25:1, 24–26:6, 18–21). Defendant placed the ticket under the windshield wiper and then opened Plaintiff's door in an attempt to talk to him. (Doc. 48-1 at 35:20–21, 37:16–19; Doc. 48-2 at 26:24–27:3). Plaintiff slammed the door while Defendant was still holding the handle. (Doc. 48-1 at 38:3–6; Doc. 48-2 at 27:6–7, 12–20). The door opened a second time—the parties dispute if it was opened by Plaintiff or Defendant—and Plaintiff and Defendant began arguing. (Doc. 48-1 at 42:17–20, 43:16–44:2; Doc. 48-2 at 28:3–9).

The parties also dispute what happened next. Defendant says he put his arm out and attempted to push Plaintiff away from him to create distance between the two. (Doc. 48-1 at 48:24–49:5, 51:21–24). At the time he did so, Defendant was concerned that Plaintiff would exit the vehicle and head-butt or tackle him. (*Id.* at 56:1–11). Plaintiff, conversely, states that Defendant reached into the van and grabbed his throat for approximately two seconds. (Doc. 48-2 at 28:11–17). Defendant does not dispute that he might have touched Plaintiff but denies choking him. (Doc. 48-1 at 53:25–54:2, 62:17–24). Both parties agree that after this, Plaintiff either struck or pushed Defendant or used his door to strike Defendant. (*Id.* at 51:23–25, 52:12–13, 18–25, 57:8–13; Doc. 48-2 at 28:22–29:6; Doc. 50-3, ¶ 8). Plaintiff then closed his door and drove away. (Doc. 48-1 at 57:14–16; Doc. 48-2 at 29:9–12, 30:6–7).

Defendant immediately reported the incident to dispatch, stating that he had been battered and gave a description of Plaintiff and his vehicle. (Doc. 48-1 at 85:23–86:8; Doc. 50-6 at 6:23–7:6). Defendant sustained a small cut on his lip and was bleeding. (Doc. 50-6 at 12:4–12). Another officer saw Plaintiff's vehicle and attempted to stop him. (Doc. 48-

2

2 at 32:7–18). When Plaintiff failed to stop the vehicle, the officer blocked his path. (*Id.* at 32:23–33:1). Plaintiff exited the vehicle and was immediately placed under arrest. (*Id.* at 36:8–16). Plaintiff was then taken to the Winter Park Police Department before being transferred to the Orange County Jail. (*Id.* at 42:22–43:6). Plaintiff was released roughly twelve hours later, and no criminal charges were filed. (*Id.* at 49:14–16, 51:12–23; Doc. 50-4 at 1).

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations

without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III.    DISCUSSION

As an initial matter, to the extent that Plaintiff attempts to raise or argue a claim for excess force in his Opposition, this Court will not permit Plaintiff to do so. "It is well settled that '[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.'" *Varazo v. Keiser Corp.*, 754 F. App'x 918, 919 (11th Cir. 2018) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Here, the First Amended Complaint, unequivocally alleges a claim for "unlawful restraint" or "wrongful search and seizure." (Doc. 24, ¶¶ 32–34). Plaintiff does not allege, or even attempt to allege, a claim for the use of excessive force in the only remaining count of the First Amended Complaint. (*See generally id.*). Accordingly, no such claim is properly before this Court and it will not be considered or discussed in this Order.

Moreover, as there seems to be some confusion by both parties, the following claim is the one and only claim currently at issue in this litigation: did Defendant cause Plaintiff to be unlawfully arrested by officers of the Winter Park Police Department and charged with battery on a law enforcement officer? (Doc. 24, ¶¶ 34–35). Plaintiff does not allege in Count III of the First Amended Complaint that the brief stop of his vehicle by Defendant was an unlawful seizure. Although both sides now devote substantial time to debating Defendant's authority to attempt to stop Plaintiff after issuing the parking ticket, this is simply not the claim alleged. As stated above, the parties cannot amend the

4

pleadings in their summary judgment briefing. Thus, this Court will not consider or address any claims that are not presently set forth in the operative pleading.

Turning to the substance of Defendant's Motion, he argues that he is entitled to qualified immunity because he had probable cause or arguable probable cause to arrest Plaintiff for, at the very least, battery. "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). "The question is 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Hargis v. City of Orlando*, No. 6:12-cv-723-Orl-37KRS, 2012 WL 6089715, at *3 (M.D. Fla. Dec. 7, 2012) (quoting *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006)). Plaintiff does not dispute that Defendant was acting within his discretionary duties with respect to Plaintiff's federal claims. *See Mears v. McCulley*, 881 F. Supp. 2d 1305, 1318–19 (N.D. Ala. 2012) ("Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers.").

Where, as here, it is not disputed that Defendant was acting within the scope of his discretionary authority, the burden shifts to Plaintiff to prove that Defendant "(1) . . . violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). In his Opposition, however, Plaintiff completely fails to respond to Defendant's argument regarding false arrest, instead attempting to shift course and argue a claim for excessive force that was simply not alleged in this case. On this basis alone, the Court

can grant Defendant's Motion because Plaintiff has failed to meet his burden. *See Davis v. Thomas*, No. 1:20-cv-01062-JPB, 2021 WL 673418, at *6 (N.D. Ga. Feb. 22, 2021); *Sanders v. Langley*, No. 1:03-CV-1631-WSD, 2006 WL 826399, at *12 (N.D. Ga. Mar. 29, 2006); *see also Smith ex rel. Ashley v. Brevard Cnty.*, No. 6:06-cv-715-Orl-31JGG, 2006 WL 2355583, at *5 n.13 (M.D. Fla. Aug. 14, 2006).

Nevertheless, even if Plaintiff had responded to Defendant's arguments, the Court finds that Defendant had probable cause, or at least arguable probable cause, to procure Plaintiff's arrest. "In Fourth Amendment terminology, an arrest is a seizure of the person, and the 'reasonableness' of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest." *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007)). A law enforcement officer has probable cause to arrest when the facts and circumstances of which he is aware are "sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop*, 485 F.3d at 1137 (quoting *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002)). "Arguable probable cause exists if 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed.'" *Hardigree v. Lofton*, 992 F.3d 1216, 1225 (11th Cir. 2021) (quoting *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995)). "So long as the circumstances known to the officers, viewed objectively, give probable cause to arrest for any crime, the arrest is constitutionally valid even if probable cause was lacking as to some offenses, or even all announced charges." *Elmore v. Fulton Cnty. Sch. Dist.*, 605 F. App'x 906, 914 (11th Cir. 2015) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004)).

Here, Plaintiff was arrested for an alleged battery on a law enforcement officer in violation of section 784.07, Florida Statutes. (Doc. 50-4 at 1). "A conviction for battery on a law enforcement officer requires proof that the officer was 'engaged in the performance of a lawful duty' not just 'on the job.'" *Nicolosi v. State*, 783 So. 2d 1095, 1096 (Fla. 5th DCA 2001) (quoting *Taylor v. State*, 740 So. 2d 89, 90 (Fla. 1st DCA 1999)). Additionally, as this Court noted in its December 16, 2020 Order (Doc. 38), "[s]imple battery is a necessarily lesser included offense of battery on a law enforcement officer." *King v. State*, 911 So. 2d 857, 857 (Fla. 1st DCA 2005). Under Florida law, "[t]he elements of simple battery are: (1) actually and intentionally touching or striking another person; and (2) against the will of the other person." *Khianthalat v. State*, 974 So. 2d 359, 361 (Fla. 2008) (citing Fla. Stat. § 784.03(1)(a)(1)).

The undisputed facts show that Defendant was in uniform and investigating an ongoing issue concerning parking in the area where Plaintiff's vehicle was found illegally parked. Defendant issued Plaintiff a parking ticket, which Plaintiff refused to accept. An altercation followed, during which Plaintiff admits he at least used the door of his vehicle to forcibly push Defendant away from him. A conviction for battery under Florida law only requires a "touching," which "can be accomplished by any intentional physical contact, no matter how slight." *Dawson v. United States*, 294 F. Supp. 3d 1300, 1314 (S.D. Fla. 2018) (citing *Johnson v. United States*, 559 U.S. 133, 138–39 (2010)). Additionally, a battery does not require the individual to use his hands or body to make contact but can be accomplished through remote means that he caused to happen. *See C.B. v. State*, 979 So. 2d 391, 395 (Fla. 2d DCA 2008) (holding that spitting on an officer was still a simple battery even though the officer was not engaged in the performance of a lawful duty when

7

the contact occurred). Thus, an objectively reasonable officer in Defendant's position could have concluded that Plaintiff had committed, at the very least, a simple battery.

To the extent that Plaintiff argues that his use of force was justified because Defendant allegedly choked him, it is well-settled that self-defense is just that, a defense. *See C.M. v. State*, 234 So. 3d 837, 840 (Fla. 2d DCA 2018); *Capalbo v. State*, 73 So. 3d 838, 842 n.1 (Fla. 4th DCA 2011). Plaintiff has cited no authority for the proposition that the existence of a defense to a crime negates the existence of probable cause. *Paez v. Mulvey*, 915 F.3d 1276, 1289–90 (11th Cir. 2019) (holding that because "probable cause is a preliminary determination" and "investigating officers are not required to resolve legal matters in dispute" the existence of a possible affirmative defense "does not negate the primary determination of probable cause"); *see also Morris v. Town of Lexington Ala.*, 748 F.3d 1316, 1325 (11th Cir. 2014) (holding that officers had probable cause, or at the very least arguable probable cause, to arrest the plaintiff for assault after he punched one of the officers during an unlawful seizure and in response to the officer pushing him because the use of such force was a defense and did not negate the existence of probable cause); *Gevarzes v. City of Port Orange*, No. 6:12-cv-1126-Orl-37DAB, 2013 WL 610456, at *4–5 (M.D. Fla. Feb. 19, 2013) (stating that "in determining probable cause, an arresting officer does not have to consider the validity of any *possible* defense" and collecting cases (quotation omitted)). Accordingly, Plaintiff has not met his burden in establishing that Defendant lacked probable cause or arguable probable cause to procure his arrest and Defendant is entitled to qualified immunity as to Count III of the First Amended Complaint.

8

## IV.   CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that Defendant's Motion for Summary Judgment (Doc. 48) is **GRANTED**. The Clerk is directed to enter judgment, in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on any of his claims against Defendant. Thereafter, the Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on September 1, 2021.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record